798 P.2d 453

STATE of Idaho, Plaintiff–Respondent,

v.

Gary Wesley MYERS, Defendant–Appellant.

No. 17900.

Court of Appeals of Idaho.

July 20, 1990.

---

Alan E. Trimming, Ada County Public Defender, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Michael A. Henderson, Deputy Atty. Gen. (argued), for plaintiff-respondent.

SWANSTROM, Justice.

Gary Myers appeals, following his conditional plea of guilty to possession of methamphetamine. I.C. § 37-2732. Myers reserved the right to appeal from the district court's order denying his motion to suppress certain inculpatory statements, as well as physical evidence found on his person and on his motorcycle. The issues on appeal are: (1) whether the officer's observation of a traffic violation provided a sufficient basis for the stop, regardless of any underlying motivation to look for evidence of an unrelated offense; (2) whether Myers was in "custody" for purposes of *Miranda* warnings; and (3) whether Myers' detention, for the purpose of interrogating him concerning possible criminal activity unrelated to the officer's stated reasons for the stop, violated Myers' Fourth Amendment right to be free from unreasonable seizures. For reasons explained below, we reverse.

The district court's findings of certain facts are not challenged. We believe the essential facts are disclosed by the following events and testimony. In the early morning of April 4, 1988, Detective John Tudbury of the Boise City Police Department was on duty in downtown Boise. He was then associated with the "Repeat Offender Program" and was engaged in surveillance. Tudbury was parked in an unmarked police vehicle when he saw Myers drive by on a motorcycle. Tudbury was acquainted with Myers and recognized him. When Myers was about a block away, Tudbury observed him turning right onto another street without signaling. Tudbury then radioed ahead for assistance and proceeded to follow Myers. Myers was later stopped by three marked patrol vehicles on Capitol Boulevard in Boise. Detective Tudbury arrived in his vehicle "within seconds." Upon reaching the scene of the stop, Tudbury exchanged greetings with Myers. Tudbury testified he was acquainted with Myers from prior police contacts and knew that Myers on "several prior occasions ... had methamphetamine on him." This knowledge prompted Tudbury to ask "Gary, are you carrying any drugs on you tonight?" Myers said no. The detective then asked Myers if he was carrying any syringes. According to Tudbury, Myers replied in the affirmative. He stated that he had a syringe in his boot. One of the uniformed police officers then took the syringe from the boot and placed Myers under arrest for possession of drug paraphernalia.

Following the arrest, Myers and his motorcycle were searched. In a locked compartment, the officer found a dental floss case containing white powder, later identified as methamphetamine. In addition to the two drug-related charges, Myers was also given a traffic citation for failure to signal a turn. The charge of possession of drug paraphernalia was later dismissed. Myers initially pled innocent to the charge of possession of methamphetamine; however, he later entered a conditional plea of guilty to the charge, reserving the right to appeal the denial of his motion to suppress.

The issues raised by Myers involve claims of constitutional error. According-

ly, the applicable standard of review is one of deference to the district court's findings of fact unless they are clearly erroneous. However, we exercise free review over the district court's determination whether constitutional requirements were satisfied in light of the facts as found. *State v. Law*, 115 Idaho 769, 769 P.2d 1141 (Ct.App.1989) (review denied).

■ The first issue on appeal is whether the officer's underlying motive is relevant in determining whether an officer is entitled to stop a motorist. Myers contends that the officer stopped his vehicle as a pretext to search for evidence of an unrelated offense. Myers argues that the stop would not have been undertaken but for the officer's underlying intent to search Myers' person and vehicle for drugs. To support this position, Myers points to the officer's testimony. At trial, the officer testified that absent prior drug contacts between him and Myers, there was no reason to believe that Myers was carrying contraband.

This issue is not one of first impression in this state. This Court addressed this question in the factually similar case of *State v. Law, supra.* In *Law*, defense counsel argued that the officer's stop of the defendant was merely a pretext for the officer to search for other incriminating evidence. In that the officer had "reasonable suspicion" to stop the defendant's vehicle for the investigative purpose of determining whether it was being driven by its owner, an unlicensed driver wanted on an outstanding bench warrant. We held that when an officer has an objectively reasonable basis for making an investigative stop, the officer's subjective motive or actual state of mind is irrelevant.

Here, the officer had an objectively reasonable basis for making the stop. In fact, the officer who stopped Myers had probable cause to make the stop because of the observed traffic infraction. I.C. § 49–808. *See also In re Griffiths*, 113 Idaho 364, 744 P.2d 92 (1987); *In re Nowoj*, 115 Idaho 34, 764 P.2d 111 (Ct.App.1988) (review denied). Consequently, any underlying motive of Detective Tudbury in stopping Myers' ve-

hicle as a pretext to search for drugs was irrelevant because the stop was justified by an objectively reasonable basis.

■ The second issue is whether Myers, upon being stopped, was in "custody" for purposes of *Miranda* warnings. In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that once a person is in "custody," the police are required to give, prior to any questioning, the well known warnings of right to silence and right to counsel. The test for determining whether questioning is custodial has been generally characterized as whether the person is deprived of his freedom of action in a significant way. This test has been refined by the Court to mean that *Miranda* is "applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984), *quoting California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam).

It was not until *Berkemer* that the United States Supreme Court was faced with the issue of "whether the roadside questioning of a motorist detained pursuant to a routine traffic stop should be considered 'custodial interrogation.'" 468 U.S. at 434, 104 S.Ct. at 3147. The United States Supreme Court held that the "noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda." *Id.* at 440, 104 S.Ct. at 3150.

However, the language in *Berkemer* suggests that the Court's holding applies only to "ordinary" or "routine" traffic stops. In *Berkemer*, the Court compared ordinary traffic stops, which are typically brief in duration and take place in a non-coercive environment, to *Terry* stops, where an officer lacks probable cause but is still allowed to briefly detain a suspect. *Id.* at 439, 104 S.Ct. at 3149–50. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The *Berkemer* Court additionally noted that both types of roadside ques-

tioning represent only minor intrusions upon motorists because of the two crucial underlying features in a typical traffic stop: its public nature and the lack of police domination. Referring to a traffic stop's "public nature," the *Berkemer* Court noted that passersby may "witness the interaction of officer and motorist. This exposure to public view ..." reduces the likelihood that an officer may obtain incriminating statements through improper means. 468 U.S. at 438, 104 S.Ct. at 3149.

Concerning "police dominated" settings, *Berkemer* pointed to "[t]he fact that the detained motorist typically is confronted by only one or at most two policemen...." *Id.* The Court stressed that such a limited show of police force is less intimidating to a motorist and is generally not likely to cause the motorist to feel compelled to admit to incriminating statements. The *Berkemer* Court stated that "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." 468 U.S. at 442, 104 S.Ct. at 3151. In a footnote, the *Berkemer* Court noted that the reasonable-person test is an objective rather than a subjective test. The Court then concluded that the defendant had failed to demonstrate that the traffic stop in the case at bar had subjected him to the kind of restraints comparable to those associated with a formal arrest. *Id.*

We now return to our case. Myers argues that he was in custody at the time that Detective Tudbury elicited inculpatory statements from him. Myers bolsters this position by directing attention to the district court's statement that "excessive amounts of police effort" were used in stopping him. In this case, three marked vehicles and one unmarked police vehicle arrived at the stop. Next, Myers points to the district court's findings that the police had "zeroed in" on him and that the "stop by the police officer was a non-routine stop." In addition, Myers claims that he was not free to leave the scene of the stop once the officer began questioning him. Lastly, Myers contends that the questions asked by Detective Tudbury were not directly related in scope to the purported reason for the stop. In particular, Myers asserts that these questions were not related to the traffic violation but were directed toward eliciting incriminating statements about drugs or drug paraphernalia.

For reasons explained below, we hold that Myers was in "custody" for purposes of *Miranda* warnings. The judge's finding that this was a non-routine traffic stop is well supported by the record. As noted in *Berkemer* an "ordinary" traffic stop is usually accompanied by one or at most two police officers. Here, four police vehicles responded to the stop. Tudbury testified that normally four police vehicles do not respond to a traffic stop. However, Tudbury explained that Myers went through three different patrol routes in the downtown Boise area. He testified that this is the reason why several patrol vehicles responded to this particular traffic stop. Although Tudbury's explanation is credible, his justification for the incident is not significant. The only relevant inquiry is whether a reasonable man in Myers' position would believe that he was deprived of his freedom of movement in a significant way. We believe that a reasonable man in Myers' position could conclude that such excessive "police domination" deprived him of his freedom of movement in a significant way.

The circumstances surrounding the stop of Myers are similar to but distinguishable from *State v. Ybarra*, 102 Idaho 573, 634 P.2d 435 (1981). In *Ybarra*, police stopped a man in a vehicle who was suspected of armed robbery. Four police vehicles responded to the stop. The Idaho Supreme Court stated that the police were not required to give *Miranda* warnings where the surplus police officers withdrew from the stop as soon as it was determined that the defendant posed no threat and the questioning was of a short duration and of a general investigatory nature. *Id.* Although *Ybarra* is similar in several ways, the key distinctions are the withdrawal of the surplus police and the general nature of the questions asked. Here, the excess police remained after Myers was stopped and questioning went specifically to drugs or paraphernalia. In fact, the uniformed

officers actually participated in the process by removing the syringe from Myers' boot, as well as the methamphetamine found on his motorcycle. Accordingly, the unusual police effort used to stop and detain Myers is one factor we will consider in determining whether Myers was in "custody" for purposes of *Miranda* warnings.

■ We now consider Myers' claim that Tudbury's questions did not reasonably relate to the purpose of the stop and were made with the intention of eliciting incriminating statements from him. He contends that Tudbury's questions must be limited, absent *Miranda* warnings, to questions directly related to the reason for the stop.

Myers' position finds support from the United States Supreme Court opinion in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry*, the Court stated that police officers who lack probable cause but whose observations give them "reasonable suspicion" to believe that a person is committing, or is about to commit a crime, may detain a person briefly in order to alleviate the grounds which provoked their suspicion. However, the Court expressly stated that the stop and inquiry must be reasonably related in scope to the justification for the stop. *Id.*

More recently, in *Berkemer v. McCarty*, *supra*, the United States Supreme Court compared an ordinary traffic stop with a *Terry* stop. There, the Court stated that "most traffic stops resemble in duration and atmosphere, the kind of brief detention authorized in *Terry*." 468 U.S. at 439, n. 29, 104 S.Ct. at 3150, n. 29. Although *Berkemer* did not address the scope of permissible questioning in an ordinary traffic stop, the Court's analogy to *Terry* stops suggests that the nature of the questions asked by an officer may affect the determination of whether *Miranda* warnings are applicable. In this case, the officer had probable cause to stop Myers only for a traffic infraction. There was no probable cause to arrest Myers for anything else until after the incriminating statements were made and the syringe was seized. Here, the questions asked by Tudbury were unrelated to the justification for the stop and were reasonably likely to elicit incriminating statements from Myers.

This last factor relates not only to the *Miranda* issue but also to whether there has been any violation of Myers' Fourth Amendment protections. We have framed this issue as being whether Myers' detention, for the purpose of interrogating him concerning possible criminal activity unrelated to the officer's stated reasons for the stop, violated Myers' Fourth Amendment right to be free from unreasonable seizures.

In *United States v. Brignoni–Ponce*, 422 U.S. 873, 881, 95 S.Ct. 2574, 2580, 45 L.Ed.2d 607 (1975), the Supreme Court said, of *Terry* stops, "the stop and inquiry must be 'reasonably related in scope to the justification for their initiation'" (quoting *Terry v. Ohio*, 392 U.S. 1, 29, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968)). The permissible limits of a *Terry* stop were more clearly delineated by the Supreme Court in *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Referring to the decision in *Brignoni–Ponce*, the Court noted that it "was unequivocal in saying that reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning *limited to the purpose of the stop.*" *Id.* at 498, 103 S.Ct. at 1324 (emphasis added). "[The person detained] may not be detained *even momentarily* without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds." *Id.* (emphasis added).

> The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *This much, however, is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.* Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. [Citations omitted.] It is the State's burden to demonstrate that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficient-

ly limited in scope and duration to satisfy the conditions of an investigative seizure.

[*Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)] hold that statements given during a period of illegal detention are inadmissible even though voluntarily given *if they are the product of the illegal detention* and not the result of an independent act of free will.

460 U.S. at 500–01, 103 S.Ct. at 1325–26 (emphasis added).

In the present case the state has not attempted to show that the officer's specific inquiries about possession of drugs and paraphernalia were somehow related to the purported reason for the traffic stop. According to the record we have for review, the *only* basis for the questions was Tudbury's knowledge that Myers had possessed drugs on several prior occasions.

We wish to make it clear that any routine traffic stop might turn up suspicious circumstances which could justify an officer asking questions unrelated to the stop. The officer's observations, general inquiries, and events succeeding the stop may—and often do—give rise to legitimate reasons for particularized lines of inquiry and further investigation by an officer.

The minimal standard of articulable justification required by the fourth amendment for an investigative stop is whether the police officers were aware of "particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant[ed] suspicion that a crime [was] being committed."

*United States v. Jones*, 759 F.2d 633, 642 (8th Cir.1985) (quoting *United States v. Martin*, 706 F.2d 263, 265 (8th Cir.1983)).

An officer's training and experience often play a role in pinpointing facts and circumstances that give rise to reasonable suspicion of criminal activity afoot. However, we are not willing to say here that the solitary fact of the officer's past experience with Myers gave rise to a "reasonably warranted suspicion that a crime was being

committed" when Tudbury approached Myers after the stop. Accordingly, we hold that the permissible scope and purpose of the *Terry* stop were exceeded. The statements made by Myers were the product of the illegal detention and must be suppressed. Consequently, we disapprove the district court's order denying Myers' motion to suppress. The judgment of conviction entered on the conditional plea must be vacated. We remand the case to the district court for further proceedings consistent with this opinion.

WALTERS, C.J., concurs.

BURNETT, J., fully concurred prior to his resignation on July 16, 1990.