**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 40017**

STATE OF IDAHO,

        Plaintiff-Appellant,

v.

TENNISON MICHAEL SILVER,

        Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)

**2013 Opinion No. 38**

**Filed: June 18, 2013**

**Stephen W. Kenyon, Clerk**

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Jerome County. Hon. John K. Butler, District Judge.

Order granting motion to suppress evidence, <u>reversed</u>, and case <u>remanded</u>.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for appellant.

Wright Brothers Law Office, PLLC; Brooke B. Redmond, Twin Falls, for respondent.

_____

LANSING, Judge

        The State appeals from the district court's order suppressing statements made by Tennison Michael Silver to law enforcement officers before the officers advised him of his right to remain silent and his right to counsel. The State asserts the officers were not required to notify Silver of his rights before questioning him because he was not in custody.

**I.**

**BACKGROUND**

        A few minutes before midnight on December 1, 2011, a law enforcement officer initiated a traffic stop after observing a driver, later identified as Silver, fail to make a complete stop at a stop sign and exceed the posted speed limit. The officer informed Silver of the reason for the stop and requested his license, registration, and proof of insurance. Silver explained that he was driving his sister's car, and that it would take him some time to find the insurance information.

1

During this time, the officer questioned him about a strong odor of marijuana that the officer detected emanating from the vehicle. Silver explained that he had recently visited a friend who smokes, but that he, Silver, had not smoked in four months. After checking the status of Silver's license, the officer asked Silver to step out of his car to perform a series of field sobriety tests.

As the officer began to administer one of the tests, a second officer, who had recently arrived on the scene, observed and removed a plastic bag containing marijuana that was plainly visible in Silver's pocket. The first officer asked Silver why he had lied, and again asked him when he had last smoked marijuana. Silver responded that he had used marijuana thirty minutes earlier. The officer asked if Silver had any other drugs or drug paraphernalia, which Silver denied. The officer then stated, "If I end up taking you to jail, and you have anything else on you, and you don't disclose it to me, that's introducing contraband into a secured facility." He then asked if Silver had "anything" on his person or in his car. Silver initially did not respond. The second officer told Silver that because he had discovered marijuana in Silver's pocket, he could "rip [Silver's] car apart," and the first officer admonished Silver to "be straight." Silver then reported that there was an ounce of marijuana in the car which the officers' ultimately retrieved. The first officer asked, "are you dealing or just using?" Silver responded that he was taking the marijuana to a friend and, in response to the officer's follow-up question, confirmed that he was delivering the marijuana to another person. The officer administered three field sobriety tests and then placed Silver under arrest.

Silver was charged with one felony count of possession of marijuana with intent to deliver and one misdemeanor count of driving under the influence. He filed a motion to suppress his responses to the officer's questions on the ground that he was subjected to custodial interrogation without *Miranda*[1] warnings. The district court granted the motion and suppressed Silver's statements. The State appeals.

## II.

## ANALYSIS

The only issue before this Court is whether Silver was in custody such that *Miranda* warnings were required before the police questioning that led to his various admissions. On review of a decision to grant or deny a motion to suppress evidence, this Court defers to the trial

---

[1]  *Miranda v. Arizona*, 384 U.S. 436 (1966).

court's findings of fact unless they are clearly erroneous, but exercises free review over the application of constitutional standards to those facts. *State v. Hawkins*, 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct. App. 1998).[2]

To protect the Fifth Amendment privilege against compulsory self-incrimination, police must inform individuals of their right to remain silent and their right to counsel, either retained or appointed, before undertaking a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966). These warnings have been deemed necessary as a prophylactic measure to secure the Fifth Amendment privilege because "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id.* at 467. A person is in custody, for *Miranda* purposes, from the moment of formal arrest or as soon as the person's "freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). *See also State v. Medrano*, 123 Idaho 114, 117, 844 P.2d 1364, 1367 (Ct. App. 1992).

An objective test is used to determine whether a person was in custody when questioning occurred. *State v. James*, 148 Idaho 574, 577, 225 P.3d 1169, 1172 (2010). The relevant inquiry is how a reasonable person in the suspect's position would have understood the situation. *Berkemer*, 468 U.S. at 442; *James*, 148 Idaho at 577, 225 P.3d at 1172. The first step is to determine whether an individual's freedom of movement was curtailed. *Howes v. Fields*, ___U.S. ___, ___, 132 S. Ct. 1181, 1189 (2012). The freedom-of-movement inquiry is, however, only a necessary and not a sufficient condition for *Miranda* custody. *Maryland v. Shatzer*, 559 U.S. 98, ___, 130 S. Ct. 1213, 1224 (2010); *State v. Hurst*, 151 Idaho 430, 436, 258 P.3d 950, 956 (Ct. App. 2011). Thus, routine traffic stops and other investigative detentions pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), do not implicate *Miranda* even though the detained persons are not free to leave during the stop. *Berkemer*, 468 U.S. at 440.

A court must consider all of the circumstances surrounding the interrogation. *Stansbury v. California*, 511 U.S. 318, 322 (1994); *James*, 148 Idaho at 577, 225 P.3d at 1172. This generally involves a consideration of whether the circumstances surrounding the interrogation

---

[2]    The State does not challenge any of the district court's factual findings.

have created a "police-dominated atmosphere," *Miranda*, 384 U.S. at 445, and whether the circumstances involve the type of "'inherently compelling pressures' that are often present when a suspect is yanked from familiar surroundings in the outside world and subjected to interrogation in a police station." *Howes*, ___ U.S. at ___, 132 S. Ct. at 1191 (quoting *Shatzer*, 559 U.S. at ___, 130 S. Ct. at 1219 ). Specific factors to be considered may include the degree of restraint on the person's freedom of movement including whether the person is placed in handcuffs, whether the subject is informed that the detention is more than temporary, the location and visibility of the interrogation, whether other persons were present, the number of questions asked, the duration of the interrogation or detention, the time of the interrogation, the number of officers present, the number of officers involved in the interrogation, the conduct of the officers, and the nature and manner of the questioning. *See Berkemer*, 468 U.S. at 435-42; *James*, 148 Idaho at 577-78, 225 P.3d at 1172-73; *Medrano*, 123 Idaho at 117-18, 844 P.2d at 1367-68. The burden of showing custody rests on the defendant seeking to exclude evidence based on a failure to administer *Miranda* warnings. *James*, 148 Idaho at 577, 225 P.3d at 1172.

In this case, Silver unquestionably was not free to leave during the traffic stop and DUI investigation. We therefore examine the totality of the circumstances surrounding the police questioning to determine whether a reasonable person would have believed that the restriction on his freedom of movement was tantamount to a formal arrest. We first consider the State's argument that the district court erred by improperly focusing on whether a reasonable person would have believed that he *would be* arrested at the conclusion of the traffic stop. This issue is illuminated by the Idaho Supreme Court's decision in *James*. There, a law enforcement officer discovered methamphetamine in a car and threatened to arrest all three occupants for possession of the methamphetamine unless one of them confessed to ownership, in which case the officer stated he would only arrest that individual. The defendant confessed and was arrested. After being charged with possession of a controlled substance, the defendant filed a motion to suppress his admission, which the district court denied. In a decision affirming the district court's decision, the Supreme Court stated:

> We find that the threat of lawful arrest alone does not transform non-custodial questioning into the functional equivalent of arrest, requiring *Miranda* warnings. Deputy Sterling, upon finding drugs in the car, had probable cause to arrest all of the occupants. Deputy Sterling's statement of his intended future conduct cannot be said to objectively change the degree of restraint *at the time of the statement*. Although such a threat may well have implications as to the voluntariness of any

4

statement made in response thereto, it cannot be said to have objectively modified the degree of restraint on James' freedom of movement at that time.

*Id.* at 578, 225 P.3d at 1173. *James* establishes that an officer's statement that a person will be arrested is not sufficient *alone* to establish custody. Such a statement may be considered, however, in conjunction with other circumstances, insofar as it affects how a reasonable person would understand his situation at the time of the statement. *See id.*

Here, the officer's statement did not convey that Silver was going to be arrested. The officer stated, "*If* I end up taking you to jail, and you have anything else on you, and you don't disclose it to me, that's introducing contraband into a secured facility." (Emphasis added.) Because the officer prefaced his statement with the word "if," a reasonable person would not have understood his statement as an indication of imminent or inevitable arrest.

Somewhat more troubling is the second officer's statement that he could "rip [Silver's] car apart" because he had discovered marijuana in Silver's pocket. This statement was arguably coercive, and for that reason would be relevant to whether Silver's subsequent statements were involuntary. However, Silver did not argue below, and has not argued on appeal, that his confession was involuntary and that issue is not before this Court. "The question whether a person is 'in custody' is related to the question of voluntariness of statements obtained by interrogation," but "[d]espite the underlying relationship, different analyses are applied to answer these questions." *James*, 148 Idaho at 576 n.5, 225 P.3d at 1171 n.5. *See also Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) ("Such a noncustodial situation is not converted to one in which Miranda applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a "coercive environment.""); *State v. Doe*, 130 Idaho 811, 814-15, 948 P.2d 166, 169-70 (Ct. App. 1997) (explaining *Miranda* is based on the Fifth Amendment privilege against self-incrimination while the doctrine disallowing the use of involuntary confessions is grounded in the Due Process Clause of the Fourteenth Amendment). Even if the police questioning here could be characterized as coercive, the particular questioning involved in this case would not have suggested to a reasonable person that he was in custody.

We next address Silver's argument that the district court correctly determined that the questioning was custodial because the police exceeded the scope of the traffic stop and DUI investigation and because the only apparent reason for the interrogation was to obtain

5

incriminating admissions for the purpose of elevating the prospective charge from simple possession of marijuana to possession with intent to distribute. This Court rejected a nearly identical argument in *State v. Dice*, 126 Idaho 595, 887 P.2d 1102 (Ct. App. 1994), where we stated:

> The error of the district court was in its analysis of the relationship between investigatory stops and the United States Supreme Court's decision in *Miranda*. . . . The district court found that questions requiring self-incriminating answers were beyond the scope of permissible inquiry and therefore required Miranda warnings. This distinction, however, has never been made by the United States Supreme Court nor by the appellate courts of this state. Indeed, virtually any investigatory questioning, beyond mere identification matters, could be considered self-incriminating.

*Dice*, 126 Idaho at 600, 887 P.2d at 1107. An interrogation does not become custodial merely because an officer expands the purpose of a stop to investigate other reasonable suspicions that are formed during the course of the stop, or because an officer briefly inquires into other matters, even when the questioning elicits incriminating responses from the defendant.[3]

Silver also appears to assert that once the officer had probable cause to arrest him, due to the discovery of marijuana in his pocket, *Miranda* warnings were required before any further questioning would be allowed. We disagree. Neither the existence of probable cause nor an officer's subjective intent to make an arrest transform what is an otherwise non-custodial interrogation into a custodial interrogation. *See Berkemer*, 468 U.S. at 442 ("A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would

---

[3] We note that whether an investigation exceeds the original justification for a stop is typically part of a Fourth Amendment analysis regarding the lawfulness of a detention rather than a *Miranda* custody analysis. *E.g., State v. Ramirez*, 145 Idaho 886, 889-90, 187 P.3d 1261, 1264-65 (Ct. App. 2008). Even under a Fourth Amendment analysis officers are not strictly limited to investigating the initial purpose of the stop for two reasons. First, the purpose of a stop is not permanently fixed at the moment the stop is initiated, for during the course of the detention there may evolve suspicion of criminality different from that which initially prompted the stop, and the scope of investigation is lawfully expanded in such situations. *State v. Sheldon*, 139 Idaho 980, 984, 88 P.3d 1220, 1224 (Ct. App. 2003). Second, officers may ask brief questions beyond the scope of their investigation so long as the questions do not extend an otherwise lawful detention. *Ramirez*, 145 Idaho at 889-90, 187 P.3d at 1264-65.

have understood his situation."); *James*, 148 Idaho at 578, 225 P.3d at 1173 (holding that defendant was not in custody although officer had probable cause).

The nature and manner of questioning may be considered, however, as part of the totality of the circumstances. Silver compares the questioning that occurred in this case to the questioning in *State v. Myers*, 118 Idaho 608, 798 P.2d 453 (Ct. App. 1990), where the defendant was stopped by three police vehicles for a traffic violation. Although the legitimate justification for the stop was a traffic infraction, the officers' motive for stopping the defendant was to question him about drug possession because he was a known drug offender. A detective arrived seconds after the stop in a fourth vehicle, and the detective immediately began questioning the defendant about possible possession of drugs or drug paraphernalia. In contrast, here, Silver was initially stopped by a single officer who, after smelling marijuana, requested the assistance of a second officer. No other officers were present. The presence of only two officers does not typically suggest the type of police domination that could convert a traffic stop into custodial interrogation. *See Berkemer*, 468 U.S. at 438-39. In addition, the officers' questions regarding Silver's drug use, possession, and intent were in response to a rapidly unfolding situation--while the first officer was discussing the traffic infractions with Silver, he noticed the smell of marijuana, and when he began to conduct field sobriety tests, marijuana was observed in Silver's pocket. This was unlike the questioning in *Myers*.[4]

Considering the totality of the circumstances, we conclude that Silver was not in custody. Only two officers were present at the scene. The officers did not draw their weapons or place Silver in a police vehicle. He was not handcuffed or told that his detention was more than temporary. Although the stop was at night, it took place in a publicly visible location on a public roadway. *Cf. James*, 148 Idaho at 578, 225 P.3d at 1173. The interrogation was brief, lasting

---

[4]      We also note that the *Myers* Court appears to have applied an incorrect standard to evaluate whether an individual was in custody for *Miranda* purposes. The Court said that "[t]he only relevant inquiry is whether a reasonable man in Myers' position would have believed that he was deprived of his freedom of movement in a significant way." *Myers*, 118 Idaho at 611, 798 P.2d at 456. That standard for determining "custody" was articulated by the United States Supreme Court in *Miranda*, 384 U.S. at 478, but it was subsequently modified in *Beheler*, 463 U.S. at 1125, where the Court established that a suspect is "in custody" for purpose of *Miranda* when "there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."

7

less than two minutes--approximately six to eight minutes after Silver was stopped. On balance, these factors suggest the questioning occurred during an investigative detention and weigh against a conclusion that Silver was in custody. The escalation in this case from a traffic infraction stop, to a DUI investigation, to a drug possession investigation was not the result of police browbeating or police domination, but instead was the result of the discovery of evidence of additional possible crimes during the officers' investigation.

Accordingly, the order suppressing Silver's statements is reversed, and the case is remanded for further proceedings.

Judge GRATTON and Judge MELANSON **CONCUR.**