**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 41651**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2015 Unpublished Opinion No. 305 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: January 13, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| STEVEN W. SPARLING, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Owyhee County. Hon. Thomas J. Ryan; Hon. Dennis Goff, District Judges.

Order denying motion to suppress, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Steven W. Sparling appeals from the district court's order denying his motion to suppress. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

An Idaho state trooper observed a vehicle, driven by Sparling, turn into a gas station parking lot without using a turn signal.[1] As the trooper pulled behind the vehicle in the parking lot, Sparling exited his vehicle and approached the trooper's patrol car. Upon making contact, the trooper noticed that Sparling appeared to be very nervous, his hands were shaking, and he was "extremely anxious to separate himself from the vehicle." The trooper asked Sparling questions about where he was traveling from, his employment, and his nervousness.

---

[1] The trooper testified that he had been alerted to watch for Sparling's vehicle before observing the traffic violation, although he did not explain the basis for the alert.

A second officer, a ranger with the Bureau of Land Management, arrived at the scene with a drug dog. After the trooper completed a driver's license check on Sparling, which was valid, he informed Sparling that the ranger was going to run the drug dog around his car because of his apparent nervousness, and Sparling consented to a search of his person. As he searched Sparling, the trooper smelled the odor of marijuana coming from Sparling. Sparling then admitted to the trooper that he had last used marijuana "a couple days ago" and that there were "roaches" in the center console of his vehicle. Meanwhile, the drug dog alerted on the driver's side door of the vehicle, and a subsequent search of the vehicle revealed a large bag of roaches and other items of drug paraphernalia inside the vehicle as well as approximately 388 grams of marijuana in the trunk.

Sparling was charged with felony possession of marijuana with intent to deliver, Idaho Code § 37-2732(a), and misdemeanor possession of paraphernalia, I.C. § 37-2734A. He filed a motion to suppress the evidence obtained during the traffic stop, arguing that the initial stop was not supported by reasonable suspicion; and even if it was, the trooper unreasonably extended the duration and scope of the stop to conduct a drug investigation. Following a hearing, the district court denied the motion. Sparling conditionally pled guilty to possession of marijuana with the intent to deliver, reserving his right to appeal the district court's denial of his motion to suppress, and the state dismissed the drug paraphernalia charge. The district court entered a withheld judgment and placed Sparling on probation for two years. Sparling timely appeals.

## II.

## ANALYSIS

On appeal, Sparling challenges the district court's conclusion that the trooper did not unreasonably extend the length or scope of the traffic stop. The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

2

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Atkinson*, 128 Idaho at 561, 916 P.2d at 1286. Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause, but more than mere speculation or instinct on the part of the officer. *Id.* An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988). On appeal, Sparling does not dispute that the trooper had reasonable suspicion to stop his vehicle for the turn signal violation.

The determination of whether an investigative detention is reasonable requires a dual inquiry: whether the officer's action was justified at its inception and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004); *State v. Parkinson*, 135 Idaho 357, 361, 17 P.3d 301, 305 (Ct. App. 2000). An investigative detention must be temporary and last no longer than necessary to effectuate the purpose of the stop. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *State v. Gutierrez*, 137 Idaho 647, 651, 51 P.3d 461, 465 (Ct. App. 2002). There is no rigid time limit for determining when a detention has lasted longer than necessary; rather, a court must consider the scope of the detention and the law enforcement purposes to be served, as well as the duration of the stop. *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985). Where a person is detained, the scope of detention must be carefully tailored to its underlying justification. *Roe*, 140 Idaho at 181, 90 P.3d at 931; *Parkinson*, 135 Idaho at 361, 17 P.3d at 305. The scope of the intrusion permitted will vary to some extent with the particular facts and circumstances of each case. *State v. Ramirez*, 145 Idaho 886, 889, 187 P.3d 1261, 1264 (Ct. App. 2008). However, brief inquiries not otherwise related to the initial purpose of the stop do not necessarily violate a detainee's Fourth Amendment rights. *Roe*, 140 Idaho at 181, 90 P.3d at 931. Any routine traffic

3

stop might turn up suspicious circumstances that could justify an officer asking further questions unrelated to the stop. *State v. Myers*, 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct. App. 1990). The officer's observations, general inquiries, and events succeeding the stop may--and often do-- give rise to legitimate reasons for particularized lines of inquiry and further investigation by an officer. *Id.* Accordingly, the length and scope of the initial investigatory detention may be lawfully expanded if there exist objective and specific articulable facts that justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *Id.*

Below, Sparling argued that the trooper unlawfully extended the stop of his vehicle because he "abandoned" the investigation into the basis for the traffic stop--Sparling's failure to use his turn signal--and instead "began a drug investigation, which ultimately delayed the purpose of the stop." On appeal, Sparling contends that the trooper unlawfully extended the stop "by delaying checking his license and registration information by asking questions unrelated to the purpose of the seizure." Sparling's argument that the trooper's general questions impermissibly extended the stop was not raised at the suppression hearing before the district court. At the suppression hearing, the district court took judicial notice of the preliminary hearing transcript, viewed the videotape of the recorded traffic stop, and heard testimony from Sparling and the trooper. None of the evidence presented to the district court raised the issue of whether the trooper extended the stop by asking unrelated questions and, thus, the district court made no findings of such. This Court will not make factual findings that the district court was not asked to make.[2]

Instead of specifically addressing the dialogue upon initial contact, the district court addressed the totality of the circumstances that occurred during the stop.[3] The court first concluded that the initial seizure of Sparling for the traffic violation was supported by reasonable suspicion, and also found it to be "very dangerous and very unusual" for Sparling to exit his vehicle and approach the trooper's patrol car upon initial contact. This act alone "rightfully

---

[2] Even if we accept Sparling's recitation of the dialogue upon initial contact, the trooper was permitted to question Sparling about his destination and purpose and to ask follow-up questions regarding his answers. *See State v. Parkinson*, 135 Idaho 357, 363, 17 P.3d 301, 307 (Ct. App. 2000); *State v. Ramirez*, 145 Idaho 886, 889-90, 187 P.3d 1261, 1264-65 (Ct. App. 2008).

[3] Less than five minutes had lapsed from the time the trooper initiated the traffic stop to the time Sparling admitted to using and possessing marijuana.

cause[d] the officer to be more observant of [Sparling] and cautious of [him]." The court further found that during the trooper's interaction with Sparling, Sparling was acting abnormally nervous, his hands were shaking, and he repeatedly "attempted to distance himself from [his] vehicle." Once Sparling obtained his license and registration from his vehicle for the trooper, he again exited his vehicle, and the trooper asked him to remain seated. Sparling complied, but left his door open with one leg positioned outside of the vehicle while the trooper continued to question him. Before returning to his patrol car, the trooper requested that Sparling shut his door and roll down his window. However, rather than complying with the trooper's request, Sparling again exited his vehicle and asked if he could stand outside instead.

The court also found that upon the trooper conducting a pat down search of Sparling's person, he "rightfully and legally inquired further of [Sparling] regarding marijuana, the odor of which he could smell" on Sparling's person. When the trooper inquired why Sparling smelled of marijuana, Sparling admitted to smoking marijuana recently and indicated there were "roaches" in the center console of his vehicle. The court concluded that Sparling's statements and the odor of marijuana gave rise to probable cause to search his vehicle, which resulted in a lawful extension of the stop.

We agree with the district court. Sparling's abnormal, nervous, and evasive behavior, upon initial contact, provided the trooper with reasonable suspicion that there were drugs or other contraband in Sparling's vehicle. Thus, the trooper's questions did not unreasonably delay the traffic stop. Further, the purpose of the stop--citing Sparling for his failure to use his turn signal--transformed into a drug investigation upon the trooper smelling marijuana on Sparling's person and Sparling admitting to possessing marijuana. The purpose of a stop is not permanently fixed at the moment the stop is initiated, for during the course of the detention there may evolve suspicion of criminality different from that which initially prompted the stop. *Parkinson*, 135 Idaho at 362, 17 P.3d at 306. The trooper did not abandon the initial purpose of the stop, for it was after the trooper conducted a license check on Sparling that Sparling consented to the search of his person.

While the trooper conducted a pat down search of Sparling, the ranger circled the drug dog around Sparling's vehicle where the dog alerted as to the presence of drugs. The United States Supreme Court has held that a drug dog sniff is not a search and may be performed during a traffic stop without violating the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 409

5

(2005).  Under the automobile exception to the warrant requirement, police officers may search an automobile and the containers within it where they have probable cause to believe that the automobile contains contraband or evidence of a crime.  *State v. Gallegos*, 120 Idaho 894, 898, 821 P.2d 949, 953 (1991).   The trooper had probable cause to search Sparling's vehicle based on the odor of marijuana, coupled with Sparling's statements.  Further, the drug dog's positive alert on the vehicle provided additional probable cause to search the vehicle for controlled substances.  Sparling's Fourth Amendment rights were not violated.  Therefore, the district court correctly concluded that the trooper did not unreasonably extend the length or scope of the initial traffic stop.

## III.

## CONCLUSION

The trooper acted within the bounds of a reasonable investigation.  Sparling has failed to demonstrate that the district court erred in determining that his detention was not unlawful or unreasonable under the circumstances.  Therefore, the district court did not err in denying Sparling's motion to suppress.  Accordingly, Sparling's judgment of conviction for possession of a controlled substance with intent to deliver is affirmed.

Judge LANSING and Judge GUTIERREZ **CONCUR.**