**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51598**

| | |
|---|---|
| STATE OF IDAHO,<br><br>    Plaintiff-Respondent,<br><br>v.<br><br>JOSEPH MILES WALLETTE,<br><br>    Defendant-Appellant. | )<br>)  **Filed: October 22, 2025**<br>)<br>)  **Melanie Gagnepain, Clerk**<br>)<br>)<br>)  **THIS IS AN UNPUBLISHED**<br>)  **OPINION AND SHALL NOT**<br>)  **BE CITED AS AUTHORITY**<br>)<br>)<br>) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Barry McHugh, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Judge

Joseph Miles Wallette appeals from his judgment of conviction for possession of a controlled substance. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

An officer was patrolling an area known for drug activity when he noticed a vehicle parked in front of a house. The officer observed that the vehicle's license plate "had several severe gouges and scratches that made the license plate clearly not legible." As the vehicle pulled away from the house, the officer initiated a traffic stop. The officer approached the vehicle and identified Wallette as the driver. The officer informed Wallette that his license plate was not clearly legible as required by Idaho law. When asked to provide his driver's license, Wallette informed the officer Wallette

1

did not have a valid license because he failed to pay a reinstatement fee. As Wallette looked for identification, the officer requested the assistance of a canine unit. The officer had Wallette exit the vehicle and began issuing a citation for driving without privileges. During that time, the officer informed Wallette that a canine unit was en route and that a drug dog would be conducting a "free air" sniff of the vehicle. When asked whether Wallette had any illegal substances in the vehicle, he indicated there were "crumbs of some sort." The officer approached the vehicle and, using his flashlight to look through the open window, saw "little crystals" he believed were consistent with "methamphetamine crumbs or shake on the seat itself." Based on the officer's training and experience with narcotics, his observations and Wallette's statements, the officer conducted a search of the vehicle and discovered methamphetamine, marijuana, and drug paraphernalia.

The State charged Wallette with felony possession of a controlled substance (methamphetamine) and misdemeanor possession of a controlled substance (marijuana). Wallette filed a motion to suppress, asserting the officer did not have reasonable suspicion for the traffic stop and that the stop was unlawfully extended. The district court held a hearing on the motion, at which it heard testimony from the officer and reviewed his bodycam and dashcam footage. Ultimately, the district court denied Wallette's motion. The district court found the officer's testimony credible and determined he had reasonable and articulable suspicion to stop the vehicle because the license plate was not legible. Additionally, the district court found that the traffic stop was not unlawfully extended and concluded the officer had probable cause to search the vehicle under the automobile exception after he saw the methamphetamine crumbs in plain view on the driver's seat.

Thereafter, Wallette entered a conditional guilty plea to felony possession of a controlled substance (I.C. § 37-2732(c)(1)), reserving his right to appeal the district court's denial of his motion to suppress. As part of the plea agreement, the State dismissed the additional charge. Wallette appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts

as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

"Mindful of the district court's credibility and factual findings," Wallette argues the district court erred in denying his motion to suppress because the officer "did not have reasonable suspicion for the stop and unlawfully extended the stop." The State responds that the record and applicable law support the district court's findings of fact and conclusions of law. We hold that Wallette has failed to show the district court erred in denying his motion to suppress.

A traffic stop by an officer constitutes a seizure of the vehicle's occupants and implicates the Fourth Amendment's prohibition against unreasonable searches and seizures. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). Under the Fourth Amendment, an officer may stop a vehicle to investigate possible criminal behavior if there is a reasonable and articulable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998). The reasonableness of the suspicion must be evaluated upon the totality of the circumstances at the time of the stop. *State v. Ferreira*, 133 Idaho 474, 483, 988 P.2d 700, 709 (Ct. App. 1999). The reasonable suspicion standard requires less than probable cause but more than mere speculation or instinct on the part of the officer. *Id*. An officer may draw reasonable inferences from the facts in his or her possession, and those inferences may be drawn from the officer's experience and law enforcement training. *State v. Montague*, 114 Idaho 319, 321, 756 P.2d 1083, 1085 (Ct. App. 1988).

In the traffic stop context, authority for a seizure ends when the tasks related to the stop are, or reasonably should have been, completed. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Tasks related to a traffic stop include addressing the traffic violation that precipitated the stop; determining whether to issue a traffic ticket; and making inquiries incident to the traffic stop, such as checking the driver's license, inspecting the vehicle's proof of insurance and registration, and

3

conducting a criminal record check of the driver. *Rodriguez v. United States*, 575 U.S. 348, 354-55 (2015); *State v. Hale*, 168 Idaho 863, 867, 489 P.3d 450, 454 (2021). Officers may not deviate from the purpose of a traffic stop by investigating (or taking safety precautions incident to investigating) other crimes without reasonable suspicion. *See Rodriguez*, 575 U.S. at 356. However, the justification for a motorist's detention is not permanently fixed at the moment the traffic stop is initiated. *State v. Wigginton*, 142 Idaho 180, 183, 125 P.3d 536, 539 (Ct. App. 2005). An officer's observations, general inquiries, and events succeeding the stop may--and often do--give rise to legitimate reasons for particularized lines of inquiry and further investigation by an officer. *State v. Myers*, 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct. App. 1990). Furthermore, even without reasonable suspicion, officers may engage in lines of investigation unrelated to an otherwise lawful traffic stop as long as doing so does not prolong the stop. *See Caballes*, 543 U.S. at 409 (holding that a dog sniff conducted during an otherwise lawful traffic stop does not violate the Fourth Amendment); *Hale*, 168 Idaho at 867, 489 P.3d at 454 (recognizing the officers may "conduct certain unrelated checks" during a traffic stop).

In this case, the officer testified at the hearing on Wallette's motion to suppress. According to the officer, he was on patrol when he noticed a vehicle parked at a house that he "had been watching and been successful getting drugs out of" in the past. The officer noted that the vehicle's license plate "had several severe gouges and scratches that made the license plate clearly not legible." Based on the vehicle's "equipment violation," the officer initiated a traffic stop. The district court found the officer's testimony credible and "largely corroborated by the video evidence" (i.e., the officer's bodycam and dashcam footage). The district court discussed the then-applicable statute pertaining to the "proper display of license plates" (I.C. § 49-428(2)) and emphasized the requirement that the license plate "be legible in the sense that it is clearly legible in the way that a license plate would normally be read." Relying on the officer's testimony and video evidence, the district court found that the "condition of the license plate led to the illegibility of the plate numbers, which provide[d] reasonable and articulable suspicion that the vehicle was being driven contrary to the traffic laws." As a result, the district court concluded that the officer "had a factual and legal basis for stopping the vehicle being driven by Wallette as a result of the damaged license plate of the rear of the vehicle."

4

Next, the district court considered whether the officer unlawfully extended the stop. The officer testified that he was "engaged in conversation" with Wallette and was "multitasking" while writing his information on the ticket that the officer intended to issue regarding the vehicle's license plate. The officer indicated that his conversation with Wallette did not cause the officer to abandon writing the citation. During this conversation, the officer informed Wallette that a canine unit was en route to conduct a "free air" sniff and asked Wallette whether there were any illegal substances in the vehicle. Wallette indicated "there might be something in there," specifying that there could be "crumbs of some sort" in the vehicle. Based on his training and experience, the officer testified that he believed Wallette was referring to "meth" when he said "crumbs." The officer asked Wallette when he last "used," to which Wallette answered, "I [do not] know, a few hours ago." The officer's conversation with Wallette prompted the officer to approach the vehicle. Using his flashlight to look inside the vehicle, the officer "could see little crystals" on the "driver's seat" of the vehicle in plain view. Based on this evidence, the district court determined that there was no "unlawful extension of the stop; rather, the character of the stop morphed as the conversation" between Wallette and the officer "took place." The district court found that "at no time was there any prolonging of the stop" and that the video evidence confirmed the officer "was multitasking" and "working on the citation" while "carrying on a conversation with" Wallette. According to the district court, once the officer had Wallette's admission about crumbs and the officer "corroborated the fact that it looked like, in his training and experience, there was some methamphetamine shards or pieces clearly visible in plain view," the officer "developed probable cause to search the entire motor vehicle under the automobile exception." The district court concluded that, "under the totality of the circumstances," Wallette failed to establish "there was an unlawful prolonging or extension of the traffic stop."

On appeal, Wallette argues the district court erred in finding that the officer had reasonable suspicion for the traffic stop. Mindful of the district court's findings to the contrary, Wallette maintains the evidence showed "the license plate was 'clearly legible' despite its alleged condition." Wallette's argument is not supported by the record. Based on the officer's testimony and video evidence presented, the district court determined that the vehicle's license plate had "gouges and scratches and dents" which rendered the plate "not clearly legible." Wallette does not challenge these findings on appeal, and we will not presume error. The district court's findings

are therefore supported by substantial and competent evidence. Further, Wallette's argument that the officer's "dashcam video does not confirm the license plate's condition" is unpersuasive. That Wallette does not believe the officer's dashcam footage confirms the condition of the vehicle's license plate does not establish error in the district court's reasonable suspicion finding based on the totality of the evidence presented.

Wallette also argues that, even if the officer had reasonable suspicion to justify the traffic stop, the district court erred in denying Wallette's motion to suppress because the officer "unlawfully extended the traffic stop to initiate a drug investigation." Once again, mindful of "the district court's credibility and factual findings that [the officer] was actively working on the citation while questioning Wallette about drugs in the" vehicle, he contends the officer "unlawfully extended the stop to question him about drugs." We disagree. The district court concluded that the officer's bodycam footage confirmed that he "was multitasking" and "was working on" the citation and "carrying on a conversation with" Wallette. Like his previous argument, Wallette does not challenge these findings on appeal, and we will not presume error.

Wallette has failed to show error in the district court's finding that the officer had reasonable suspicion to stop the vehicle Wallette was driving because the vehicle's rear license plate was not "clearly legible." Wallette has also failed to show the district court erred in concluding that his detention was not unlawfully extended.

## IV.

## CONCLUSION

Substantial evidence supports the district court's findings that the officer had reasonable suspicion to conduct a traffic stop and that the officer did not unlawfully extend the stop. As a result, Wallette has failed to show the district court erred in denying his motion to suppress. Accordingly, Wallette's judgment of conviction for possession of a controlled substance is affirmed.

Judge HUSKEY and Judge TRIBE, **CONCUR**.