968 P.2d 258

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jayson G. MASSEE, Defendant–
Appellant.**

**No. 23979.**

Court of Appeals of Idaho.

Nov. 4, 1998.

Larry D. Purviance, Mountain Home, for appellant.

Alan G. Lance, Attorney General; Kenneth M. Robins, Deputy Attorney General, Boise, for respondent. Kenneth M. Robins argued.

LANSING, Chief Judge.

This is an appeal from the district court's denial of Jayson Massee's motion to suppress certain incriminating statements that he made before being given *Miranda* warnings. Because we conclude that Massee was not in custody at the time he made the statements, we affirm the district court's ruling.

**BACKGROUND**

The following facts were revealed at the hearing on Massee's suppression motion. Jayson Massee was a probationer who had

consented to warrantless searches of his residence as a condition of probation. Robert Peace was his probation officer. After learning that Massee had recently submitted a urine sample that tested positive for methamphetamine, Peace went to Massee's residence to conduct a home visit. As Peace began to look around Massee's home, he discovered a shotgun shell on the kitchen table. Knowing that it was a violation of his probation conditions for Massee to possess firearms or explosives, Peace asked Massee whether there were guns or more ammunition in the residence. Massee responded that there were not, but on continuing to look around, Peace found a 12–gauge shotgun and a box of shells. Peace asked Massee and his girlfriend, who resided with Massee, to sit on a couch in the living room. Peace then called for assistance from law enforcement officers to conduct a thorough search of the residence.

During a subsequent conversation, but before police arrived, Massee stated that the shotgun had been given to him by his grandfather. It is unclear from the record whether Massee volunteered this information or Peace asked him specifically about the origin or ownership of the gun. In any event, Peace did not give Massee any warnings regarding his right to remain silent or his right to counsel prior to Massee's incriminating statement. Greg Berry, an Elmore County Sheriff's detective, arrived after Massee made the initial statement about the gun. As Peace was explaining to Berry what had transpired, Massee "spoke up" and told Berry that he had received the shotgun from his grandfather. Massee was then arrested and charged with being a felon in possession of a firearm, I.C. § 18–3316. At the time he made the statements, Massee was not handcuffed and had not been told that he would be arrested. Peace testified, however, that he would have detained Massee if he had tried to depart.

Massee filed a motion to suppress the physical fruits of the search and any statements he made to law enforcement authorities. The district court denied the suppression motion, and Massee was convicted following a jury trial. On appeal, Massee no longer challenges the legality of the search, but contends that his incriminating statements to Peace and Berry regarding ownership of the gun should have been suppressed due to a violation of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Specifically, Massee contends that the district court was incorrect in finding that Massee was not in custody when the statements were made and that *Miranda* was therefore inapplicable.

## ANALYSIS

When a decision on a motion to suppress evidence is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996).

In *Miranda*, the United States Supreme Court held that the prosecution cannot use statements obtained from a defendant during a custodial interrogation unless the defendant was first informed of his Fifth Amendment privilege against self-incrimination and his right to counsel. The Supreme Court deemed it necessary to impose this safeguard because it believed that police interrogation within a custodial setting involves "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Miranda*, 384 U.S. at 467, 86 S.Ct. 1602. *See also Minnesota v. Murphy*, 465 U.S. 420, 430, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984); *Schneckloth v. Bustamonte*, 412 U.S. 218, 247, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). It was in order to counter "the overbearing compulsion ... caused by isolation of a suspect in police custody," that the Court mandated the exclusion of statements obtained during custodial interrogation in the absence of the requisite warnings. *U.S. v. Washington*, 431 U.S. 181, 187, n. 5, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977); *Murphy, supra*. "Custody" in this context means "a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,*

463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977)).

Since Massee was not under arrest at the time he admitted ownership of the gun, the question presented by this appeal is whether he was nonetheless "in custody" because his freedom was restrained to a degree associated with formal arrest.

In *Murphy, supra,* the United States Supreme Court held that an interview of a probationer in the office of the probation officer was not a custodial interrogation for *Miranda* purposes. The Court explained:

> Even a cursory comparison of custodial interrogation and probation interviews reveals the inaptness of [an] analogy to *Miranda.* Custodial arrest is said to convey to the suspect a message that he has no choice but to submit to the officers' will and to confess. It is unlikely that a probation interview, arranged by appointment at a mutually convenient time, would give rise to a similar impression. Moreover, custodial arrest thrusts an individual into "an unfamiliar atmosphere" or "an interrogation environment ... created for no purpose other than to subjugate the individual to the will of his examiner." Many of the psychological ploys discussed in *Miranda* capitalize on the suspect's unfamiliarity with the officers and the environment. Murphy's regular meetings with his probation officer should have served to familiarize him with her and her office and to insulate him from psychological intimidation that might overbear his desire to claim the privilege. Finally, the coercion inherent in custodial interrogation derives in large measure from an interrogator's insinuations that the interrogation will continue until a confession is obtained. Since Murphy was not physically restrained and could have left the office, any compulsion he might have felt from the possibility that terminating the meeting would have led to revocation of probation was not comparable to the pressure on a suspect who is painfully aware that he literally cannot escape a persistent custodial interrogator.

*Murphy,* 465 U.S. at 433, 104 S.Ct. 1136 (citations omitted).

■ Massee attempts to distinguish his situation from that described in *Murphy* by pointing out that probation officer Peace testified that he would not have allowed Massee to leave had he tried to do so. This subjective intent of the probation officer is irrelevant, however, because it was not communicated to Massee. The "custody" test is an objective one; it is not based upon the subjective impressions in the minds of either the defendant or the law enforcement officer. "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). *See also Stansbury v. California,* 511 U.S. 318, 321–22, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994); *In re Doe,* 130 Idaho 811, 815, 948 P.2d 166, 170 (Ct.App.1997); *State v. Myers,* 118 Idaho 608, 611, 798 P.2d 453, 456 (Ct.App.1990).

■ The record does not support Massee's contention that his freedom was restricted to a degree associated with formal arrest. Questioning by a probation officer in the familiar surroundings of Massee's own home, in the presence of his girlfriend, is readily distinguishable from the "incommunicado interrogation ... in a police-dominated atmosphere" contemplated by *Miranda. Miranda,* 384 U.S. at 445, 86 S.Ct. 1602. *See also Beckwith v. United States,* 425 U.S. 341, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976). The restraint imposed by the instruction that Massee sit on his living room couch while the probation officer completed a search is not equivalent to that effected by a formal arrest. Massee was not handcuffed and was not told that he was under arrest or would be arrested. No police weapons were trained upon him, and there is no evidence of any overbearing interrogation by the probation officer or the deputy. Although it is unclear whether Massee's incriminating statements were entirely spontaneous, the record does not indicate that his comments were the result of

any coercive tactic or show of force by law enforcement officers.

We do not doubt that circumstances could occur under which in-home questioning by government agents would be subject to the requirement of *Miranda* warnings. This, however, is not such a case. The district court correctly held that Massee was not in custody when he admitted ownership of the shotgun. Accordingly, we affirm the district court's denial of Massee's motion to suppress his incriminatory statements.

PERRY and SCHWARTZMAN, JJ., concur.