**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38298**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2012 Unpublished Opinion No. 333** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: January 24, 2012** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **LEROY STEVEN WILSKE,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Appellant. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

Judgment of conviction for felony driving under the influence, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Elizabeth Ann Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

GUTIERREZ, Judge

Leroy Steven Wilske appeals from his judgment of conviction entered upon his conditional guilty plea to felony driving under the influence (DUI). For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Wilske attended a DUI Victims Panel (Panel) at the Coeur d'Alene offices of the Idaho Transportation Department as a condition of probation for a prior DUI conviction. Officer Shane Avriett, a participant in the Panel who was in uniform and armed, encountered Wilske in the hallway near a restroom and smelled the strong odor of alcohol on Wilske. Officer Avriett asked Wilske if he had been drinking and Wilske admitted he had. Wilske claimed he did not drive himself to the Panel and admitted he was on probation. Officer Avriett requested that Wilske accompany him into a small classroom off the hallway and Wilske complied. Officer Avriett

1

then asked Wilske to submit to a breath test, to which Wilske agreed. The test indicated Wilske had consumed alcohol.

Officer Avriett had the substance abuse council coordinator present at the Panel summon an Idaho State Trooper and remained in the room with Wilske until Corporal Charles Robnett, also in uniform and armed, arrived. Officer Avriett stood in the room with the coordinator while Corporal Robnett questioned Wilske as to how he had gotten to the Panel. After initially stating his roommate dropped him off, Wilske eventually admitted he had driven to the Panel after Corporal Robnett asked if the roommate would confirm Wilske's account if contacted. Wilske then submitted to several field sobriety tests performed by Corporal Robnett in the classroom. After failing the field sobriety tests, he was arrested for DUI and advised of his *Miranda*[1] rights.

Wilske was charged with felony DUI, having been convicted of similar offenses twice within the preceding ten years. Idaho Code §§ 18-8004, 18-8005. He filed a motion to suppress, advancing several claims, including that he was subjected to custodial interrogation prior to being advised of his *Miranda* rights, in contravention of his Fifth Amendment rights under the United States Constitution. The district court denied the motion, concluding in regard to the *Miranda* claim that Wilske had not been under arrest or the custodial equivalent when he was questioned by law enforcement in the classroom. Wilske entered a conditional guilty plea to felony DUI, preserving his right to appeal the denial of his suppression motion. Wilske now appeals the denial of his motion to suppress.

## II.

## ANALYSIS

Wilske contends the district court erred in denying his motion to suppress statements obtained in violation of his Fifth Amendment rights under the United States Constitution. Specifically, he contends the district court erred in finding he was not in "custody" prior to being given *Miranda* warnings.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

2

suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

When an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. *Miranda v. Arizona*, 384 U.S. 436, 478 (1966). Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure the exercise of the right will be scrupulously honored, the following measures are required: he must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney; and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. *Id*. at 478-79. If a person is not properly given these warnings prior to answering a question in a custodial interrogation, the statement is inadmissible. *Id*. at 479.

*Miranda* warnings are only triggered by custodial interrogation. *State v. Medrano*, 123 Idaho 114, 117, 844 P.2d 1364, 1367 (Ct. App. 1992). The United States Supreme Court equated custody with a person being deprived of his or her freedom by the authorities in any significant way. *Miranda*, 384 U.S. at 478. This test has evolved to define custody as a situation where a person's freedom of action is curtailed to a degree associated with formal arrest. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *State v. Myers*, 118 Idaho 608, 610, 798 P.2d 453, 455 (Ct. App. 1990). It requires more than a circumstance where a suspect was not free to leave. *State v. Hurst*, 151 Idaho 430, 436, 258 P.3d 950, 956 (Ct. App. 2011). The initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323 (1994). To determine if a suspect is in custody, the only relevant inquiry is how a reasonable person in the suspect's position would have understood his or her situation. *Berkemer*, 468 U.S. at 442; *Myers*, 118 Idaho at 611, 798 P.2d at 456.

In order to make this determination, we must review the totality of the circumstances presented in the record. *State v. Tapp*, 136 Idaho 354, 363, 33 P.3d 828, 837 (Ct. App. 2001). In

3

evaluating the totality of the circumstances, the Supreme Court has determined that the following factors are relevant:

> the location, timing, and length of the interview, the nature and tone of the questioning, whether the defendant came to the place of questioning voluntarily, the use of physical contact or physical restraint, and the demeanor of all of the key players, both during the interview and in any proceedings held in court.

*Thompson v. Keohane,* 516 U.S. 99, 118 (1995). The presence of other persons may also be considered in the analysis. *Hurst*, 151 Idaho at 436, 258 P.3d at 956.

Determining that Wilske was not in custody for the purposes of *Miranda* prior to being advised of his rights, the district court stated:

> [T]his court is going to find that Mr. Wilske, through up until the time of his *Miranda* rights [being read], was not in custody for the purposes of *Miranda*, that the definition being his freedom of movement being impeded such that a reasonable person would associate it with a formal arrest. The Court is going to find that an investigation was going on. Mr. Wilske knew that an investigation was going on and that a reasonable person would not believe, under those circumstances, that they were under arrest.
>
> The contact with Mr. Wilske was brief in duration. The number of questions and the manner of questioning was not of an overbearing or coercive manner or demeanor of doing so. He was not taken to a secret place or a place where iron bars closed behind him. He was taken into a classroom and asked to go into a classroom where there was a window open. There were two officers present and a couple of civilians, but the Court does not find that to be overbearing circumstances.
>
> [H]e was not placed in cuffs. . . . [T]here is no appearance that [officers] put hands on him, led him by the arm into that room, or that he ever said can I use the bathroom, can I leave the room, can I get up and those requests were denied. He wasn't impeded physically in that way. The conduct of the officers by all appearances to this Court was respectful and professional. They didn't have to believe him that he had been dropped off, and in fact it turns out they were right not to believe him. They didn't buy it, and it turned out to have been a falsehood. The conduct of the officers was not such that it elevated this contact into one that a reasonable person would associate with formal arrest.

On appeal, Wilske contends the district court's finding that he was not in custody is clearly erroneous because he was "removed from a highly visible location to a far more private, isolated, and secure location;" was asked the same questions by Corporal Robnett that he had already been asked by Officer Avriett; was questioned by an armed officer while another armed officer stood in the room "in order to better monitor him;" was "given the impression that questioning and the detention would continue until he made an admission;" and was not given a

4

specific timeframe for how long the officers were planning to keep him in the classroom. Upon examination of the record, we conclude the district court did not err in finding Wilske was not in custody for *Miranda* purposes because a reasonable person would not have associated the circumstances with a formal arrest. The district court explicitly considered the factors relevant to such an inquiry and came to a reasoned conclusion. Specifically, we agree that, as the district court found, the location, timing, and duration of the questioning support a finding that Wilske was not in custody. The investigation was conducted at a venue that Wilske attended voluntarily, during normal "business hours" for the Panel, and it occurred at the offices of the Transportation Department, as opposed to law enforcement quarters. Additionally, the detention lasted a relatively short time: Officer Avriett conducted the breath test, approximately ten minutes passed while they waited for Corporal Robnett to arrive on the scene, and it took a relatively short time until Wilske admitted to Corporal Robnett that he had driven to the Panel. Although Wilske attempts to paint the classroom he was removed to as "private, isolated, and secure," the record is clear that the classroom was mere feet away from the room in which the Panel participants were located and the door, alternately open and closed during the relevant period, had a window. Further, Wilske entered the classroom voluntarily upon being asked by Officer Avriett. It is clear from the record that the purpose of moving to the classroom was not to restrict Wilske's movement, but to avoid creating a "scene" in front of the Panel participants.

In any case, that questioning occurs in a somewhat isolated room, even when that room is in a police station, does not establish the setting was custodial. For example, in *State v. Birkla*, 126 Idaho 498, 887 P.2d 43 (Ct. App. 1994), the defendant was asked to accompany an officer to the police station to answer questions concerning criminal allegations. Once at the station, the defendant was questioned in an interview room by a single detective. Birkla later testified the door was locked and he was told he could not use the restroom or smoke or drink in the room; the detective testified the door was not locked and he told Birkla he was free to leave. With little discussion of the issue, this Court ultimately concluded the conduct surrounding Birkla's questioning did not amount to custody requiring *Miranda* warnings, even where it was undisputed that Birkla had been questioned in a room, alone with the detective, with the door closed. *Id.* at 501-02, 887 P.2d at 46-47.

In addition, the record supports the district court's findings that the nature and tone of the questioning, as well as the demeanor of the participants, was largely benign--specifically, that the

nature of the questioning was not overbearing or coercive and was relatively brief, and the conduct of the officers was respectful and professional and did not escalate the situation to the point of being custodial. Wilske does not dispute these findings on appeal. Further, as the district court found, there was no use of physical force or handcuffs, and there was no indication Wilske was ever impeded physically in that he was prohibited from standing and/or leaving the room upon his request. *See Hurst*, 151 Idaho at 436-38, 258 P.3d at 956-58 (in holding that the defendant was not in custody for purposes of *Miranda*, the Court noted the detective had not touched, handcuffed, or otherwise physically restrained Hurst and the tone of the conversation at Hurst's workplace was relaxed, informal, and brief, in spite of the fact Hurst was a primary suspect and the detective, unbeknownst to Hurst, was prepared to arrest Hurst if he did not comply). *Cf. State v. Frank*, 133 Idaho 364, 369-70, 986 P.2d 1030, 1035-36 (Ct. App. 1999) (holding the defendant was in custody where, during the full course of the investigation, the defendant was handcuffed in the back of a police vehicle--a curtailment of his freedom to a degree associated with formal arrest). Nor is there evidence Wilske was ever told that he could not leave, that he was under arrest, or that he was ever threatened with arrest.

Additionally, at least one non-law enforcement officer--in this case two women associated with the Panel--was present during various portions of the interview. In short, this was not the type of interrogation conducted in a "police-dominated atmosphere" contemplated by *Miranda*. *State v. Massee*, 132 Idaho 163, 165, 968 P.2d 258, 260 (Ct. App. 1998) (quoting *Miranda*, 384 U.S. at 445). Rather, it is more akin the interrogation in *Massee*, where the defendant was told to sit on his living room couch while a probation officer completed a search. Although a significant factor in *Massee*, that the interrogation occurred at the defendant's house, is not present here, there are remaining relevant factors to our inquiry. Specifically, we noted in *Massee* that, like in the present situation, the defendant was not handcuffed, was not told he was under arrest or would be arrested, no police weapons were trained on him, and there was no evidence of any overbearing interrogation by the law enforcement officers present. *Massee*, 132 Idaho at 165, 968 P.2d at 260. Upon these facts, among others, we concluded Massee's freedom was not restricted to a degree associated with formal arrest. *Id*. at 165-66, 968 P.2d at 260-61.

Wilske's contention that the fact two uniformed, armed officers were present contributed to a custodial setting is not persuasive. In *Hurst*, 151 Idaho 430, 258 P.3d 950, the defendant made a similar argument, pointing out the detective in the case was wearing a badge and carrying

6

a firearm, and their conversation had taken place within sight of a marked police cruiser--all of which, he argued, contributed to his being in custody for *Miranda* purposes. We noted, however, that these factors exist in most citizen/police encounters and, thus, carry little weight in assessing whether an individual would reasonably believe himself to be in custody. *Id*. at 436-37, 258 P.3d at 956-57. In addition, the presence of two officers is not, in itself, particularly indicative of police domination. In *Meyers*, 118 Idaho 608, 798 P.2d 453, this Court discussed the reasoning behind the rule that routine traffic stops are not generally considered custodial for *Miranda* purposes given that in regard to the level of "police dominat[ion]" of such stops, the detained motorist is typically confronted by *only one or at most two* policemen. *Id*. at 611, 798 P.2d at 456. By contrast in *Meyers*, four police officers responded in four different patrol vehicles to the defendant's traffic stop, leading us to conclude that a reasonable person in Meyers' position could conclude such excessive "police domination" deprived him of his freedom of movement in a significant way. *Id*. Such a show of police force was not present in this case.

Wilske also argues the fact Corporal Robnett asked him the same questions as were already asked by Officer Avriett and focused on obtaining Wilske's admission to having driven to the Panel under the influence somehow contributed to a custodial setting. However, as the State points out, the mere fact the officers did not immediately accept Wilske's assertion that he had not driven to the Panel, but continued to, in what the district court found to be a relatively polite and non-overbearing manner,[2] question him on this point, does not render the encounter custodial such that it is indicative of an arrest. To the contrary, probing for the truth of a suspect's statement is consistent with an investigative stop--the purpose of which is to investigate whether wrong-doing occurred. In addition, to the extent this argument implicitly encompasses a contention that the fact officers suspected him of a crime necessarily contributed to a custodial setting, such is not the case. Again, the defendant in *Hurst* made a similar argument, contending he was in custody because it was clear from the detective's statements the detective had already investigated Hurst and considered him a suspect regarding the pertinent

---

[2] As the district court recognized when denying Wilske's motion to suppress, Wilske's testimony indicated a higher level of authority being shown by the officers than the officers themselves testified to. However, the district court is charged with making credibility determinations and was entitled to give more credence to the officers' accounts. *See State v. Flowers*, 131 Idaho 205, 207, 953 P.2d 645, 647 (Ct. App. 1998).

7

criminal allegations. We noted that while relevant, this factor is not dispositive. *Hurst*, 151 Idaho at 437, 258 P.3d at 957. As stated by the United States Supreme Court in *Stansbury*, 511 U.S. at 325:

> An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned. Those beliefs are relevant only to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her "freedom of action." Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest. The weight and pertinence of any communications regarding the officer's degree of suspicion will depend upon the facts and circumstances of the particular case. In sum, an officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave.

(Citations omitted.)

Overall, the circumstances here are no more coercive than those present in *State v. Osborne*, 130 Idaho 365, 370, 941 P.2d 337, 342 (Ct. App. 1997), where we concluded Osborne was not in custody for *Miranda* purposes. There, Osborne was picked up at his residence by a police officer and taken to a police station for questioning, but was never told he could not leave. On appeal, Osborne argued he was in custody during the questioning because he was picked up at his residence by a man he knew was a police officer, taken to a police station, escorted into the police station through a locked door, questioned for up to two hours and forty minutes, interviewed by two officers, and was unaware of why he was there. However, we noted officers testified Osborne voluntarily agreed to ride with the officer to the police station and was not intimidated into doing so, the questioning lasted only approximately an hour, Osborne was never told he was under arrest or could not leave, Osborne never asked to leave, there were other exits available to Osborne besides the locked door he had entered, and Osborne was returned home after the questioning. *Id*. at 369-370, 941 P.2d at 341-42. Likewise here, as we reiterated above, Wilske voluntarily entered the classroom, was interviewed by only two officers (but only one at a time), and was not told he was under arrest or could not leave. Further, there is no indication the door was locked or that there were no exits available for his use.

We conclude the district court examined the totality of the circumstances and that the facts as found by the court are supported by substantial and competent evidence. On these facts, we conclude the applicable constitutional principles were correctly applied in this case to determine that a reasonable person in Wilske's position would not have believed himself to have had his freedom curtailed to the extent of an arrest. *See Birkla*, 126 Idaho at 502, 887 P.2d at 47 (upholding district court's finding that questioning was not custodial despite some conflicting testimony where the district court clearly examined the totality of the circumstances, the facts found by the court were supported by substantial and competent evidence, and the court correctly applied constitutional principles). Therefore, Wilske was not in custody for the purposes of *Miranda*. Accordingly, the district court's denial of Wilske's motion to suppress is affirmed, as is his judgment of conviction for felony driving under the influence.

Judge LANSING and Judge MELANSON **CONCUR.**