IN THE COURT OF APPEALS OF THE STATE OF IDAHO

Docket No. 41671

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2015 Opinion No. 41 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed:  July 9, 2015 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| EDWARD RAY CHRISTENSEN, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Sixth Judicial District, State of Idaho, Bannock County.  Hon. Stephen S. Dunn, District Judge.

Order denying motion to suppress, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Reed P. Anderson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Edward Ray Christensen appeals from the district court's order denying his motion to suppress.  He challenges the district court's determination that his Fifth Amendment rights were not violated.  We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

An Idaho Department of Correction's probation and parole officer, Julie Guiberson, received an anonymous tip that Christensen, a parolee on her supervision caseload, was dealing methamphetamine.  Consequently, Officer Guiberson contacted Idaho State Police to request assistance and went to Christensen's house to conduct a home visit.[1]  While parked in front of

---

[1]    Officer Guiberson testified that four officers arrived on-scene in response to her request for assistance.

1

Christensen's residence, Officer Guiberson and Trooper Skinner observed a woman exit Christensen's residence. Trooper Skinner briefly engaged with the woman while Officer Guiberson approached and knocked on Christensen's door. The woman did not provide any information as to why she had been at the residence.

Upon being admitted into Christensen's residence, Officer Guiberson informed Christensen that she had received a tip that he was selling methamphetamine and that the woman who exited his residence revealed that she purchased methamphetamine from him.[2] Christensen admitted to selling methamphetamine to the woman. Officer Guiberson then informed Christensen that new charges would be filed against him but if he cooperated, he would face a possession charge as opposed to a delivery charge. Christensen admitted that there was methamphetamine under the couch, where it was found. Meanwhile, the officers began to search the residence. Christensen's girlfriend was also present at the residence during the interview and corresponding search.

Shortly after the search began, Christensen informed Officer Guiberson that he was willing to talk to the officers, and Trooper Skinner assisted Officer Guiberson in interviewing Christensen. Neither Officer Guiberson nor Trooper Skinner gave Christensen *Miranda*[3] warnings before interviewing him. During the interview, Christensen sat unrestrained on a stool in the kitchen and the interview was relaxed and consensual. According to Officer Guiberson, Christensen was "very forthcoming" and was answering freely about his suppliers, his level of sales, and his personal methamphetamine use. The home visit search and interview took approximately forty-five minutes to one hour.

The State charged Christensen with possession of a controlled substance, Idaho Code § 37-2732(c)(1), and with being a persistent violator, I.C. § 19-2514. Christensen filed a motion to suppress, asserting that his Fifth Amendment right against self-incrimination was violated because he was not advised of his *Miranda* rights prior to being interviewed. The district court denied the motion.

Christensen entered a conditional guilty plea to one count of possession of a controlled substance, preserving the right to appeal the district court's denial of his motion to suppress. The

---

[2]     Officer Guiberson's statement as to the information she learned from the woman was an interview tactic, as the woman revealed no information to Officer Guiberson or Trooper Skinner.

[3]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

2

district court imposed a unified five-year sentence with four years determinate. Christensen timely appeals.

## II.

## ANALYSIS

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

The requirement for *Miranda* warnings is triggered by custodial interrogation. *State v. Medrano*, 123 Idaho 114, 117, 844 P.2d 1364, 1367 (Ct. App. 1992). The United States Supreme Court equated custody with a person being deprived of his or her freedom by the authorities in any significant way. *Miranda v. Arizona*, 384 U.S. 436, 478 (1966). This test has evolved to define custody as a situation where a person's freedom of action is curtailed to a degree associated with formal arrest. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *State v. Myers*, 118 Idaho 608, 610, 798 P.2d 453, 455 (Ct. App. 1990). The initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323 (1994). To determine if a suspect is in custody, the only relevant inquiry is how a reasonable person in the suspect's position would have understood his or her situation. *Berkemer*, 468 U.S. at 442; *Myers*, 118 Idaho at 611, 798 P.2d at 456.

A court must consider all of the circumstances surrounding the interrogation. *Stansbury*, 511 U.S. at 322; *State v. James*, 148 Idaho 574, 577, 225 P.3d 1169, 1172 (2010). Factors to be considered may include the degree of restraint on the person's freedom of movement (including whether the person is placed in handcuffs), whether the subject is informed that the detention is more than temporary, the location and visibility of the interrogation, whether other individuals were present, the number of questions asked, the duration of the interrogation or detention, the time of the interrogation, the number of officers present, the number of officers involved in the

3

interrogation, the conduct of the officers, and the nature and manner of the questioning. *See Berkemer*, 468 U.S. at 441-42; *James*, 148 Idaho at 577-78, 225 P.3d at 1172-73. The burden of showing custody rests on the defendant seeking to exclude evidence based on a failure to administer *Miranda* warnings. *James*, 148 Idaho at 577, 225 P.3d at 1172.

Since Christensen was not under arrest at the time he admitted to possessing and dealing methamphetamine, the issue is whether he was nonetheless "in custody" because his freedom was restrained to a degree associated with formal arrest. In denying Christensen's motion to suppress, the district court relied on *State v. Massee*, 132 Idaho 163, 968 P.2d 258 (Ct. App. 1998) and *State v. Young*, 136 Idaho 711, 39 P.3d 651 (Ct. App. 2002). Both of these cases addressed the issue of whether the defendant in each case was in custody for purposes of *Miranda* while being questioned in his home. In *Massee*, this Court addressed whether a probation officer should have advised his probationer of his *Miranda* rights during a home visit before questioning him about his illegal possession of a firearm. While we acknowledged that "circumstances could occur under which in-home questioning by government agents would be subject to the requirement of *Miranda* warnings," several factors existed to negate Massee's contention that his freedom was restricted to a degree associated with formal arrest. *Massee*, 132 Idaho at 166, 968 P.2d at 261. Specifically, we relied on the following factors:

> Questioning by a probation officer in the familiar surroundings of Massee's own home, in the presence of his girlfriend, is readily distinguishable from the "incommunicado interrogation . . . in a police-dominated atmosphere" contemplated by *Miranda*. The restraint imposed by the instruction that Massee sit on his living room couch while the probation officer completed a search is not equivalent to that effected by a formal arrest. Massee was not handcuffed and was not told that he was under arrest or would be arrested. No police weapons were trained upon him, and there is no evidence of any overbearing interrogation by the probation officer or the deputy. Although it is unclear whether Massee's incriminating statements were entirely spontaneous, the record does not indicate that his comments were the result of any coercive tactic or show of force by law enforcement officers.

*Massee*, 132 Idaho at 165-66, 968 P.2d at 260-61 (citations omitted). Because Massee was not in custody, *Miranda* was inapplicable.

Similarly, in *Young*, we held that Young was not in custody for purposes of *Miranda* when he was detained and questioned in his home during the execution of a validly issued search warrant. *Young*, 136 Idaho at 721, 39 P.3d 661. We first noted that "a person detained during

4

execution of a search warrant is generally not in custody" for purposes of *Miranda*. *Young*, 136 Idaho at 719, 39 P.3d at 659. We then concluded that Young's detention did not rise to the level of a custodial interrogation based on the totality of the circumstances: the officers did not draw their weapons; no force or threat of force was used; Young was not handcuffed; the officers did not control Young's movements to a degree associated with formal arrest; and the officers' questioning of Young was limited in scope and duration.[4] *Id.* at 720, 39 P.3d at 660. Therefore, *Miranda* warnings were not required.

Applying these two cases, the district court concluded that "a reasonable person in Christensen's circumstance would not have felt his freedom of action was curtailed to the degree associated with a formal arrest." In reaching this conclusion, the district court offered the following analysis:

> Similar to *Massee*, Christensen was first approached, in his own home, by his parole officer. . . . [This diminished the coercive nature of an unfamiliar environment]. Like *Massee*, Christensen remained unrestrained while being interviewed by his parole officer, in his own home, with his girlfriend present. [Trooper] Skinner participated in the interview, but confirmed [Officer] Guiberson's testimony that the conversation was "low-key" and "relaxed." Finally, the Court finds the officers limited the detention and questioning in scope and duration, focusing the questions on the contraband in the house and limiting the encounter to at most sixty (60) minutes. All of these factors significantly reduced the coercive nature of a custodial interrogation that triggers the *Miranda* safeguards.
>
> The Court acknowledges that besides [Officer] Guiberson and [Trooper] Skinner, there were at least three other police officers conducting a search of Christensen's home . . . . Additionally, [Officer] Guiberson used an interview tactic on Christensen as she entered his home, misinforming him that the woman exiting Christensen's home had revealed Christensen had sold her methamphetamine. Finally, as soon as Christensen admitted to selling methamphetamine, [Officer] Guiberson informed Christensen that new charges would be filed against him--either a delivery charge or a possession charge. However, the Court does not find that these factors increased the coercive nature of the encounter to a degree associated with a formal arrest that would trigger *Miranda*. [As in *Young*,] [a]lthough there were several officers in the home conducting the search, only two officers, one of whom was Christensen's [parole] officer, interviewed Christensen while he remained unrestrained. . . . The

---

[4] It is unclear the exact number of officers present at Young's residence during the questioning and search; however, we noted that the investigating officer and "other officers" were conducting the search when Young arrived. *State v. Young*, 136 Idaho 711, 717, 39 P.3d 651, 657 (2002).

presence of officers conducting the search while two officers interviewed Christensen did not make the encounter police-dominated.

We agree with the district court.

On appeal, Christensen attempts to distinguish this case from *Massee* and *Young* by arguing that his "status as a parolee changed the entire equation," making his interrogation custodial. While Christensen argued below that he was factually in custody, he did not argue that his status as a parolee rendered him legally in custody. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Even if we were to entertain this argument, while Christensen cites to authority which holds that, in the context of the Fourth Amendment, "parolees have fewer expectations of privacy than probationers, because parole is more akin to imprisonment than probation is to imprisonment," *Samson v. California*, 547 U.S. 843, 850 (2006), he cites no authority for this proposition in the context of the Fifth Amendment. Moreover, this assertion leads to the implication that a parole officer could never talk to a parolee without first administering *Miranda* warnings. This argument makes little sense given that parolees enjoy a lesser expectation of privacy.[5] We conclude that Christensen has failed to meet his burden of demonstrating, under the totality of the circumstances, that his freedom of movement had been curtailed to the extent associated with formal arrest. Thus, *Miranda* warnings were not required.

### III.
### CONCLUSION

Christensen failed to demonstrate that he was in custody at the time of questioning. Accordingly, we affirm the district court's denial of Christensen's motion to suppress.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR**.

---

[5] "[O]n the Court's continuum of possible punishments, parole is the stronger medicine; ergo, parolees enjoy even less of the average citizen's absolute liberty than do probationers." *Samson v. California*, 547 U.S. 843, 850 (2006) (citations and internal quotation marks omitted).