# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 51188

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: July 28, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| MOLLIE MEGAN SHAUGHNESSY, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Third Judicial District, State of Idaho, Washington County. Hon. Kiley Stuchlik, District Judge.

Order denying motion to suppress, <u>affirmed</u>; judgment of conviction, <u>affirmed</u>.

Erik R. Lehtinen, State Appellate Public Defender; Ian H. Thomson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Mollie Megan Shaughnessy appeals from her judgment of conviction for possession of a controlled substance. Shaughnessy argues the district court erred by denying her motion to suppress because she was not provided with *Miranda*[1] warnings before officers conducted their investigation and searched her home. Shaughnessy also contends her consent to search was coerced and there was no probable cause to obtain a warrant, so the inevitable discovery doctrine did not apply. The State argues that *Miranda* warnings were not required as Shaughnessy was not in police custody and her consent to search was voluntarily given. We hold the district court did not err because Shaughnessy was not in police custody and her consent to search was voluntarily given. The order denying Shaughnessy's motion to suppress and her judgment of conviction are affirmed.

_____

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Officer Samson was dispatched to a residence for a call for service; the caller informed dispatch that there was illegal use of narcotics inside the home. When Officer Samson arrived, two citizens informed him that Shaughnessy was inside the residence and had a bag of methamphetamine and a pipe in her hand. Officer Samson and Officer Pratt then went to the back of the residence, which was the main entrance, and contacted Shaughnessy. Officer Samson engaged in conversation with Shaughnessy and asked for her consent to search the residence for narcotics. Officer Samson explained to Shaughnessy that if she did not give him consent to search the residence, she would have to remain outside while he applied for a search warrant. Shaughnessy then gave Officer Samson consent to search the residence. During the search, the officers found methamphetamine.

The State charged Shaughnessy with possession of a controlled substance, Idaho Code § 37-2732(c)(1). Shaughnessy filed a motion to suppress, arguing that the officers violated her rights under the Fifth Amendment to the United States Constitution because she was in custody and had not been given *Miranda* warnings, and her consent to search the residence was involuntary. A hearing on the motion to suppress was held; Officer Samson was the only witness that testified. After hearing argument, the district court orally denied Shaughnessy's motion to suppress, finding that Shaughnessy was not subject to a custodial interrogation when she made the statements and her consent to search was not coerced. The district court also applied the inevitable discovery doctrine, finding that the officers possessed probable cause to search the residence.[2] Shaughnessy entered a conditional guilty plea to the possession of a controlled substance charge, reserving her right to appeal the district court's denial of her motion to suppress. Shaughnessy appeals.

# II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts

---

[2] On appeal, the State does not argue that the inevitable discovery doctrine applies.

as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Shaughnessy argues that the district court erred by denying her motion to suppress. Shaughnessy asserts that she was in custody and was not given the necessary *Miranda* warnings before the officers conducted their investigation and searched her home, and that her consent to search the home was coerced. Shaughnessy also argues that the discovery of the incriminating evidence was not inevitable because the officers did not have probable cause to obtain a search warrant. The State responds that the officers were not required to give Shaughnessy *Miranda* warnings because Shaughnessy was not in custody and that Shaughnessy's consent to search was not coerced.

Shaughnessy first argues that the district court erred because she was in custody and was not given necessary *Miranda* warnings before the officers conducted their investigation and searched her home. The requirement for *Miranda* warnings is triggered by custodial interrogation. *State v. Medrano*, 123 Idaho 114, 117, 844 P.2d 1364, 1367 (Ct. App. 1992). The United States Supreme Court has held that a person is in custody when a person is deprived of his or her freedom by the authorities in any significant way. *Miranda v. Arizona*, 384 U.S. 436, 478 (1966). This includes a situation where a person's freedom of action is curtailed to a degree associated with formal arrest. *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984); *State v. Myers*, 118 Idaho 608, 610, 798 P.2d 453, 455 (Ct. App. 1990). The initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323 (1994). To determine if a suspect is in custody, the only relevant inquiry is how a reasonable person in the suspect's position would have understood his or her situation. *Berkemer*, 468 U.S. at 442; *Myers*, 118 Idaho at 611, 798 P.2d at 456.

A court must consider all of the circumstances surrounding the interrogation. *Stansbury*, 511 U.S. at 322; *State v. James*, 148 Idaho 574, 577, 225 P.3d 1169, 1172 (2010). Factors to be

3

considered may include the degree of restraint on the person's freedom of movement (including whether the person is placed in handcuffs), whether the subject is informed that the detention is more than temporary, the location and visibility of the interrogation, whether other individuals were present, the number of questions asked, the duration of the interrogation or detention, the time of the interrogation, the number of officers present, the number of officers involved in the interrogation, the conduct of the officers, and the nature and manner of the questioning. *See Berkemer*, 468 U.S. at 441-42; *James*, 148 Idaho at 577-78, 225 P.3d at 1172-73. The burden of showing custody rests on the defendant seeking to exclude evidence based on a failure to administer *Miranda* warnings. *James*, 148 Idaho at 577, 225 P.3d at 1172.

The district court considered the totality of the circumstances and held that there was no Fifth Amendment violation because Shaughnessy was not in custody; as a result, the officers were not required to provide her with *Miranda* warnings. The district court noted that the location of the interview took place on Shaughnessy's back doorsteps and Shaughnessy was smoking a cigarette throughout the interaction. The district court considered the duration of the interaction, approximately fifty-nine minutes, and found it was not a coercive duration. Next, the district court found that Shaughnessy volunteered information, including that, "there's weed here, beer here," in the house and the statement was not in response to a question about narcotics at her residence. The district court found that the officers' questions were not intense, Shaughnessy "did a lot of the talking," and her demeanor was calm and conversational. Likewise, the district court found that the officers' demeanor was also calm and conversational, and they did not get aggressive, threatening, or intimidating with Shaughnessy. The only aggressive activity the district court found was Officer Samson's interaction with Shaughnessy's friend, who Shaughnessy also told to calm down. In considering this one aggressive moment, the district court held that it did not cause the conversation to become "coercive or overly intense."

The district court noted that although Shaughnessy had some physical limitations, she never asked for her walker and voluntarily came outside without it. Finally, the district court found that while there were two officers present, Officer Samson was not wearing his official uniform. And while a third officer eventually arrived, which "could be more coercive than a situation with a single officer," the collective behavior of the officers was not threatening or intimidating. The district court found that the officers did not tell Shaughnessy she had to answer their questions and Shaughnessy indicated to her friend that she was not worried about interacting with the officers.

4

Ultimately, the district court concluded that a reasonable person in Shaughnessy's circumstances would have felt that she was at liberty to terminate the interaction and leave. As a result, Shaughnessy was not in custody and there was no requirement that she be provided with *Miranda* warnings.

Shaughnessy argues: (1) she was in custody because the officers questioned her in her own home, so she could not remove herself and "go home" and, thus, was not free to leave; (2) because Officer Samson told her that she was not going to be allowed to leave without first searching the property, her detention amounted to an arrest; (3) because Officer Samson believed that the conversation with Shaughnessy amounted to a criminal investigation, it implied she was in custody for *Miranda* purposes; and (4) Officer Samson "made his intensity, force and command of the situation evident" when he yelled at Shaughnessy's friend.

Although Shaughnessy argues that being questioned at her home should weigh in favor of a finding that she was in custody because she was unable to either retreat into her home or leave the property, Shaughnessy fails to cite authority in support of that argument. A party waives an issue on appeal if either authority or argument is lacking. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Furthermore, multiple Idaho courts have found that a suspect was not in custody for purposes of *Miranda* when the suspect was being questioned in his own home. *State v. Christensen*, 159 Idaho 339, 342, 360 P.3d 348, 351 (Ct. App. 2015); *State v. Young*, 136 Idaho 711, 721, 39 P.3d 651, 661 (Ct. App. 2002); *State v. Massee*, 132 Idaho 163, 165-66, 968 P.2d 258, 260-61 (Ct. App. 1998). As a result, the district court did not err in concluding that the location of the questioning did not weigh in favor of finding that Shaughnessy was in custody.

Shaughnessy also argues that "Officer Samson told [Shaughnessy] that she was not going to be allowed to leave without first searching her property." That statement is not supported by the record. At the hearing, Officer Samson testified that he told Shaughnessy that she could not reenter the home until it was searched. Officer Samson subsequently testified that, "I believe most of the beginning she was, she was free to leave. Until when I asked her about doing a consent search of the residence, and the reason why." Because Officer Samson never told Shaughnessy that she was not free to leave, and there is nothing in the record that indicates otherwise, this particular fact does not support Shaughnessy's argument.

Shaughnessy also cites to Officer Samson's statement that he believed he was conducting a criminal investigation. It is well established that a court looks at the objective, rather than

subjective view of an officer who is conducting an investigation with a suspect, which does not bear upon the question of whether the individual is in custody for purposes of *Miranda*. *Stansbury*, 511 U.S. at 324. "Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue." *Id.* at 325. Although Officer Samson testified that he believed he was conducting a criminal investigation for methamphetamine, he never informed Shaughnessy that she was under arrest. Officer Samson's actions likewise did not indicate that Shaughnessy was under arrest; he did not handcuff her or restrict her movement, other than informing her that she could not reenter the residence to possibly destroy evidence inside. As a result, any detention of Shaughnessy prior to and during the search, was an investigative detention, which is insufficient to trigger *Miranda* warnings. *State v. Silver*, 155 Idaho 29, 32, 304 P.3d 304, 307 (Ct. App. 2013) (finding that investigative detentions pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968) do not implicate *Miranda* even though the detained persons are not free to leave during the stop).

Finally, we reject Shaughnessy's argument that her consent to search was coerced because of Officer Samson's interaction with Shaughnessy's friend as the record does not support Shaughnessy's position. At the hearing, Officer Samson testified that he yelled at Shaughnessy's friend to stop interfering. However, during this interaction Officer Samson testified that Shaughnessy was also "chewing out" her friend for interrupting. The district court concluded that the interaction between Officer Samson and Shaughnessy's friend did not transform the interaction between Officer Samson and Shaughnessy into one of a coercive nature and we agree. Based on the totality of the circumstances, the record supports the district court's conclusion that Shaughnessy was not in custody, and as a result, the officers were not required to provide her *Miranda* warnings.

Shaughnessy next argues her consent to search the residence was coerced, so the inculpating evidence produced by the subsequent search should have been suppressed. Although a warrantless entry or search of a residence is generally illegal and violative of the Fourth Amendment, such an entry or search may be rendered reasonable by an individual's consent. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App. 1998). In such instances, the State has the burden of demonstrating consent by a preponderance of the evidence. *State v. Kilby*, 130 Idaho 747, 749, 947 P.2d 420, 422 (Ct. App. 1997). The State must show that consent was not the result of duress or coercion,

either direct or implied. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct. App. 1993). The voluntariness of an individual's consent is evaluated in light of all the circumstances. *Whiteley*, 124 Idaho at 264, 858 P.2d at 803. Consent to search may be in the form of words, gestures, or conduct. *State v. Knapp*, 120 Idaho 343, 348, 815 P.2d 1083, 1088 (Ct. App. 1991). Whether consent was granted voluntarily, or was a product of coercion, is a question of fact to be determined by all the surrounding circumstances. *State v. Hansen*, 138 Idaho 791, 796, 69 P.3d 1052, 1057 (2003).

The district court held that Shaughnessy freely and voluntarily consented to a search of her residence both before and after the officers conducted the safety sweep. The district court found there were no coercive police questions and Officer Samson asked for consent more than once. The district court found that although Shaughnessy was grieving the death of her long-time partner, her demeanor during the interaction with the officers was calm. The district court noted that Shaughnessy joked with the officers throughout the interaction, never asked for more time, never asked to speak with legal counsel, and never broke down or started crying. On the issue of the search warrant, the district court found the officers informed Shaughnessy that she could stay outside until a warrant was either approved or denied. The district court stated that although Shaughnessy might not have liked the choices before her, Shaughnessy voluntarily elected to grant consent for the safety sweep, and then again for the officers to search her residence for narcotics.

Shaughnessy argues the district court erred because she was physically trapped, unable to retreat back into her home, and told the officers she could not walk. Shaughnessy's position is that the officers promised her she could make her medical appointment in exchange for her consent to search the residence, so she had no choice but to comply. Shaughnessy also contends that she had an incapacity to clearly assess or think about consenting to the search because she was grieving over the very recent death of her partner.

The evidence supports the district court's conclusion that Shaughnessy's consent to search was not coerced. Officer Samson testified that the conversation between Shaughnessy and the officers was a casual one, apart from when Officer Samson yelled at Shaughnessy's friend to stop interfering. During this interaction, Officer Samson testified that Shaughnessy was also "chewing out" her friend for interrupting. Bodycam footage of the incident supports the district court's findings regarding Shaughnessy's emotional state. While Shaughnessy was visibly upset and grieving over the loss of her partner, she was coherent and understood that Officer Samson was

requesting her consent to search her residence for narcotics. The district court considered the totality of circumstances and concluded Shaughnessy's consent was voluntarily given. The district court did not err in holding that Shaughnessy's consent to search was not coerced.

## IV.

## CONCLUSION

The district court did not err in holding that Shaughnessy was not in custody and her consent to search the residence was not coerced. Therefore, the district court's order denying Shaughnessy's motion to suppress and her judgment of conviction are affirmed.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.